UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC ESQUIRE DETERS,

    Plaintiff,

  v.

RICHARD POROTSKY, et al.,

    Defendants.

Case No. 1:25-cv-386

McFarland, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On June 10, 2025, Plaintiff Eric Esquire Deters paid the requisite filing fee and filed suit against Richard Porotsky and the law firm of Dinsmore & Shohl, LLP. (Doc. 1). On July 25, 2025, Defendants filed a motion to dismiss this lawsuit for failure to state a claim. For the reasons that follow, the undersigned recommends that Defendants' motion be granted.

    **I.**    **Standard of Review**

Under the relevant standard, this Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997))

(emphasis omitted). Under the incorporation-by-reference doctrine, wherein "a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" if it is "referred to in the complaint and is central to the plaintiff's claim ...." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotation marks and citations omitted).

## II. Allegations of Complaint and Pertinent Background

The allegations in Plaintiff's complaint are quite sparse. He alleges little more than that Defendant Porotsky included a libelous statement about Deters in an email dated May 19, and did so in the scope of Porotsky's employment with Dinsmore & Shohl LLP. Because the May 19 email was transmitted in the course of an ongoing case in state court, and generally alludes to a second case previously filed in this Court, some background from publicly available records is judicially noticed to provide context.

### A. Relevant Background from Public Records

Start with the parties. Deters, a former attorney,[1] was previously involved in multiple cases involving allegations of fraud and medical malpractice against Dr. Abubakar Atiq Durrani[2] in both state and federal court (hereafter, the "Durrani litigation"). Defendant Porotsky is an attorney who represents one or more insurers that defended the underlying tort claims against Durrani under a reservation of rights. During the course of representation by attorneys in Plaintiff's namesake law firm, hundreds of Durrani claimants won verdicts totaling millions of dollars. But the insurer, known as "Med Pro,"

---

[1] Plaintiff was formerly known as Eric Charles Deters.
[2] Durrani fled to Pakistan in 2013 after being indicted for Medicare fraud. *See United States. v. Durrani*, S.D. Ohio Case No. 1:13-cr-084, (Doc. 37, superseding indictment).

has resisted paying out claims asserted by those successful Durrani claimants. A significant amount of ongoing litigation concerns the lack of payment by Med Pro.[3]

Although Deters initially represented many of the original Durrani plaintiffs, he was later suspended from the practice of law in Kentucky, and is no longer licensed to practice law in any jurisdiction.[4] So in recent years, "[a]ttorney David Drake has taken over the plaintiffs' representation in the Durrani cases." *In re Disqualification of Reece*, 178 Ohio St.3d 1277, 1277-78 (Ohio 2025).[5] Deters remains employed by Drake as a consultant, a role to which Porotsky has objected.[6] In addition, because Drake is not licensed to practice law in Ohio, Ohio attorney Alan Statman oversees the Durrani cases in Ohio.[7] *Id.*

---

[3] Much of that litigation remains ongoing. But on March 31, 2025, U.S. District Judge Barrett dismissed two cases in which claimants had sued Med Pro under Ohio Rev. Code § 3929.06, a provision that permits plaintiffs who win damages at trial to file a posttrial, supplemental complaint against a judgment debtor's insurer. *See, e.g., Adams et al. v. MedPro, et al.*, S.D. Ohio Case No. 1:24-cv-207-MRB, Doc. 28; *see also McCann v. The Medical Prot. Co., Inc. et al.,* S.D. Ohio Case No. 1:24-cv-208-MRB. Judge Barrett granted the insurer's motions to dismiss all claims in the *Adams* and *McCann* cases based on a contractual exclusion in the subject policies for any "willful tort," because the underlying state court jury verdicts found that Durrani committed the tort of fraudulent misrepresentation.

[4] "Since 2012, Deters has been suspended from the practice of law on multiple occasions for violations of the Kentucky Rules of Professional Conduct, including several instances of dishonesty." *Deters v. Kentucky Bar Ass'n*, 646 Fed. Appx. 468, 470 (6th Cir. 2016); *see also Deters v. Ky. Bar Assoc.*, 627 S.W.3d 917, 919 (Ky. 2021) (denying reinstatement). Deters was also suspended from practice in this Court. *See In Re Eric C. Deters*, Case No. 1:12-mc-042. He was permitted to permanently retire from Ohio practice on September 17, 2014. However, he was later sanctioned for the unauthorized practice of law in Ohio. *See Disciplinary Counsel v. Deters*, 180 N.E.3d 1086, 165 Ohio St. 3d 537 (Ohio 2021) (per curiam) (imposing permanent injunction and civil penalty as sanction for unauthorized practice). In the opinion issued by the Ohio Supreme Court, the majority wrote that it "was most troubled by Deters's struggle to accept his diminished role in the legal profession following his Kentucky suspension and his Ohio retirement." *Id.*, 180 N.E.3d at 1093, 165 Ohio St.3d at 544; *see also, generally, Deters v. Hammer,* No. 1:20-cv-362-DRC-SKB, 2021 WL 664011, at *2, n.2 (S.D. Ohio Feb. 19, 2021) (Report and Recommendation chronicling Plaintiff's extensive history of discipline, Rule 11 sanctions, and suspensions in Kentucky, Ohio, and Florida.)

[5] In the case of *In re Disqualification of Reece*, 178 Ohio St. 3d 1277, Porotsky attempted to disqualify the presiding state court judge. Previously, counsel for the Durrani claimants sought to disqualify the same judge. *See In re Disqualification of Reece*, 163 Ohio St. 3d 1285 (Ohio 2021). None of the attempts to disqualify Judge Reece have been successful.

[6] Defendant Porotsky has accused Deters of "engag[ing] in the unauthorized practice of law by continuing to provide legal and strategic advice to plaintiffs in the Durrani cases while acting as a consultant." *See In re Disqualification of Reece*, 178 Ohio St.3d 1277.

[7] Statman also represents Deters in satellite litigation in which former Durrani clients have sued Deters. *See, e.g., Breitenstein v. Deters*, S.D. Ohio Case No. 1:21-cv-533-JPH.

The May 19 email at issue in this case was sent by Porotsky to Statman in connection with a state court case. In *The Medical Protective v. CAST, et al.*, Hamilton County Court of Common Pleas No. A 2304696, (hereafter, the "Hamilton County Case"), Med Pro seeks to have its Durrani insurance policies declared *void ab initio.* (*See* Doc. 10-2, copy of state court second amended complaint.)

Retired Franklin County Court of Common Pleas Judge Guy L. Reece II presides over the Hamilton County Case as well as other state court Durrani litigation. Judge Reece entered an Agreed Protective Order on October 7, 2024 to protect "potentially ….commercially sensitive, proprietary and/or confidential information." (*See* Doc. 10-3, copy of order.) Med Pro has filed two motions asserting violations of that protective order. Med Pro's first motion alleged that its confidential documents were improperly attached to an affidavit filed by Deters on November 25, 2024. Judge Reece granted relief by sealing the affidavit. (*See* Doc. 10-5, order of 12/9/24.) When Statman filed an amended motion for summary judgment that again disclosed confidential documents, Porotsky sent Statman the May 19, 2025 email that is the subject of this lawsuit. Porotsky followed up the email by filing a second motion concerning the violation; Judge Reece granted relief to Med Pro a second time by striking Statman's amended motion for summary judgment on June 4, 2025.

Although Porotsky's May 19 email primarily expresses his dismay with the violation of the protective order in the Hamilton County Case, it also alludes to a related federal court Durrani case, *Adams et al. v. The Medical Protective Co. Inc., et al.*, No. 1:20-cv-170-MRB. The cited *Adams* case, filed by 398 Durrani claimants against Med Pro, broadly alleges that Med Pro and its lawyers are liable for fraud and conspiracy based on Med

4

Pro's Durrani litigation conduct. The reference in Porotsky's May 19 email is to comments made by Judge Barrett at an April 30, 2025 hearing about Deters' continued role in the Durrani litigation. At that hearing, Judge Barrett denied Porotsky's request for a gag order against Deters. (*Id*., Doc. 276 (hearing transcript).)[8] Citing Ohio's injunction against the practice of law by Deters, however, Judge Barrett directed Statman to certify that future filings in any Durrani case before Judge Barrett would be "drafted or directly supervised" by Statman or other counsel of record. (*Id*., PageID 11759.)

> [T]he Ohio Supreme Court said the practice of law is not just restricted to court appearances but also encompasses legal advice and counsel, et cetera, et cetera….
>
> I'm going to deny the motion for a gag order…. But from here on out, anything that gets filed in this case or any of the cases involving the Durrani litigation in front of me, you guys have to certify that either you guys drafted or directly supervised the drafting of the order [sic].

(*Id*., Doc. 276, PageID 11757; *see also id*., PageID 11759, instructing that Deters is not to be "involved in discovery disputes and things like that because that's engaging in the practice of law.")

Having provided the necessary contextual background of both the Hamilton County Case and the Adams case filed by 398 Durrani plaintiffs in this Court, the undersigned returns to the analysis of the complaint filed in this case.

---

[8]Judge Barrett made other rulings at the same hearing, reiterating that he was leaving open the possibility of fraud and conspiracy claims arising from conduct that occurred after August 24, 2018. (*Id*., Doc,. 71; *see also* Doc. 276, PageID 11764-11765.) Judge Barrett also clarified which claims were foreclosed by his prior ruling on Med Pro's motion to dismiss the second amended complaint, took a motion to dismiss the third amended complaint under advisement, and denied Plaintiffs' motion to file a fourth amended complaint. (Doc. 275; *see also* Doc. 276.)

**B. The Amended Complaint**

On June 11, Plaintiff filed an amended complaint. The amended complaint consists of eleven numbered allegations against Defendants Porotsky and his law firm, Dinsmore & Shohl. The first four allegations assert the existence of diversity jurisdiction. The remaining allegations allege that Porotsky's May 19, 2025 email to Statman includes a libelous statement about Statman's disclosure of confidential documents in the Hamilton County Case that negatively reflects on Deters. (Doc. 3, PageID 11, ¶ 5.) Plaintiff alleges that the statement "was 100% regarding Eric Deters," and constitutes libel because it is false and was communicated to a third person. (*Id.*, ¶¶ 6-7.) Deters further alleges that the statement "caused harm" and "was stated with malice" against him as a "public figure." (*Id.*, ¶ 7.) He also alleges that the statement holds him in a "false light" and is "libel per se because it is about Eric Deters' profession." (*Id.*, ¶¶ 8-9.) Plaintiff's sole reference to Dinsmore & Shohl is the allegation that the email "was made in the course of Porotsky's scope of employment at Dinsmore." (*Id.*, ¶ 10.)

Defendants' motion to dismiss includes a copy of the subject email, which is fully considered because it is incorporated by reference in the complaint. The email reads:

> **Subject: Violation of Protective order – Re: Med Pro v. CAST – Intervening Defs. Amended Motion for Summary Judgment**
>
> Dear Alan,
>
> Please reply by 12 noon Tuesday to let me know you received this and will agree (as noted below) to correct this new violation of the Court's Protective Order dated October 7, 2024, and to stop these problems from occurring as noted below.
>
> In short, we received your Amended Motion for summary judgment Friday, and in reviewing it today, we see that you again attached (and publicly filed) MedPro's confidential documents. This is the same mistake that you admitted to making last Fall, when you filed these confidential items publicly,

6

attached to the Affidavit of Eric Deters. You claimed it was an inadvertent "oversight" at the time. But as we noted then, the handling of these matters does not appear to be an "oversight." **Rather, it is part of a pattern of improper handling (including allowing unlicensed people to handle important legal matters).** This needs to end, as Judge Barrett ordered recently for his Courtroom. It needs to end in State Court as well.

Accordingly, please reply immediately… to:
1. agree to formally withdraw the MSJ filing you made Friday (which includes MedPro's confidential materials)….
2. agree that you will not file MedPro's confidential materials publicly again[.]
3. agree to an order that you will certify each filing in state court in the same way that Judge Barrett ordered you to do in federal court (i.e. that you personally did the work for each filing or personally supervised it).

(Doc. 10-1, PageID 448-449 (emphasis added).)

Plaintiff's amended complaint alleges that the highlighted statement, standing alone, constitutes libel against Deters.

### III. Analysis

**A. Plaintiff's Conclusory Complaint and Failure to Oppose Dismissal**

Plaintiff's amended complaint is entirely conclusory. The eleven numbered allegations assert the "formulaic recitation of the elements of a cause of action" without the inclusion of "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 and 570 (2007). Defendants fill in the blanks by providing a copy of the subject email and citations to the most relevant Durrani cases. But the addition of those factual details only cements the undersigned's conclusion that the complaint is legally insufficient to state a claim under Rule 12(b)(6).

Deters' response to Defendants' motion to dismiss fails to put forward any cogent legal arguments in opposition to dismissal. Instead, Deters uses his response to insult the

legal profession and judiciary and to threaten to initiate new litigation against Porotsky's counsel in this case, Joel Sechler, and Mr. Sechler's law firm, based on the contents of the Motion to Dismiss. (Doc. 11, PageID 836.)

As Judge Barrett previously explained in No. 1:20-cv-170-MRB:

"It is well established in the Sixth Circuit that failure to respond to an argument made in support of a Rule 12(b)(6) motion to dismiss a claim results in a forfeiture of the claim." *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 650 (E.D. Tenn. 2015) (citing *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 Fed. Appx. 567, 569 (6th Cir. 2013)); *see also United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009) ("To preserve [an] argument... the litigant not only must identify the issue but also must provide some minimal level of argumentation in support of it.").

(*Id.*, Doc. 71, PageID 2585-2586.) Deters' failure to minimally respond to the substance of Defendants' arguments in this case amounts to an acknowledgment of their merits.

### B. Deters Fails to State a Claim for Defamation

For example, Defendants persuasively argue that Plaintiff Deters fails to state an actionable claim for libel as a matter of law.

"Under Ohio law, 'it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not.'" *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632 (6th Cir. 2015) (quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 669 (1983), *overruled on other grounds by Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007)). In order to establish a claim for defamation, a plaintiff "must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Driehaus*, 779 F.3d at 632–33 (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 978 N.E.2d 832, 852 (Ohio 2012) (internal citation omitted)). Failure to establish any one element is fatal to a defamation claim. *Id.*

*Boulger v. Woods*, 917 F.3d 471, 478 (6th Cir. 2019).

> Ohio has adopted a "reasonable reader" standard. If a reasonable reader, reading a statement in the context of the entire publication, would interpret the statement as defamatory, then the plaintiff has an actionable claim.

*Croce v. New York Times Company*, 930 F.3d 787, 793 (6th Cir. 2019) (citing *Am. Chem. Soc.*, 978 N.E.2d at 853). The undersigned concludes that no reasonable individual would interpret the allegedly objectionable statement as defamatory, because it was contained in an email between counsel related to ongoing litigation, was not published other than to opposing counsel, and was neither defamatory nor false as to Deters.

### 1. The Email is Subject to Absolute Litigation Privilege

On its face, the subject email was sent by Attorney Porotsky to opposing counsel in the course of his representation of Med Pro in the Hamilton County Case. More than a half century ago, the Sixth Circuit held that Ohio's absolute litigation privilege applies to communications between attorneys when those communications are made in relation to litigation. *Theiss v. Scherer*, 396 F.2d 646, 650 (6th Cir. 1968) ("The rights of clients should not be imperiled by subjecting their attorneys to the fear of suits for libel or slander.") The email clearly expressed Porotsky's concern with an apparent violation of the protective order in the Hamilton County Case. The concern appears to have been well-founded, since the state court granted relief to Med Pro by striking the amended motion for summary judgment. Therefore, the alleged defamatory statement is subject to an absolute privilege.

Notably, Deters does not dispute the application of the privilege. "Attorneys enjoy an absolute privilege for statements made in the course of representing a client in litigation." *Harsh v. Franklin*, No. 24331, 2011-Ohio-2428, ¶ 18, 2011 WL 2089198 (Ohio Ct. App. 2d Dist., May 20, 2021). "The litigation privilege provides absolute immunity to

9

parties, witnesses, lawyers, and judges from future lawsuits for *statements* made during and relevant to judicial proceedings." *Reister v. Gardner*, 164 Ohio St. 3d 546, 548, 174 N.E.3d 713, 715 (Ohio 2020) (emphasis original, additional citations omitted). "The litigation privilege is… applicable to statements that bear 'some reasonable relation to the judicial proceeding in which' they appear." *Id*., 164 Ohio St.3d at 549 (citing *Surace v. Wuliger*, 25 Ohio St.3d 229, 495 N.E.2d 939 (Ohio 1986), at syllabus); *see also Stout v. Columbia Gas of Ohio, Inc*., 2021-Ohio-609, ¶ 82, 2021 WL 840961, at *17 (Ohio App. 2 Dist., 2021) (holding that attorney and law firm's statements about plaintiff were made in the course of representing their client in litigation, and therefore were subject to absolute privilege.)

### 2. Alternative Reasons for Dismissal

While the absolute litigation privilege is grounds enough for dismissal of Plaintiff's complaint, Defendants' motion includes other persuasive grounds for dismissal. For example, the email was not "published" to anyone other than to opposing counsel in connection with a pending case. The transmission to opposing counsel, without more, does not constitute a plausible publication to a third party under Ohio law. *See Young v. Jones*, 122 Ohio App.3d 539, 544, 702 N.E.2d 445 (6th Cir. 1997) (affirming grant of summary judgment on defamation claim where plaintiff had failed to show that statements were made outside of grievance process). Both context and the lack of publication preclude any "reasonable reader" from finding the statement to be defamatory.

In addition, only a false statement that refers to the *plaintiff* may be defamatory. In the email, Porotsky levels an accusation not against Deters, but against Statman, asserting that Statman's repeated violation of the protective order was inexcusable

because it was "part of a pattern of improper handling (including allowing unlicensed people to handle important legal matters)." In addition to being leveled at Statman, the accusation speaks to a plurality of "unlicensed people" who Statman has failed to appropriately supervise. Even if Statman inferred that Porotsky was complaining about Statman's supervision of Deters as among that group, the sentence *still* is not defamatory to Deters. Deters is indeed "unlicensed" to practice law. A true statement is not defamatory.

### C. Rule 11 Sanctions Should be Imposed

In the years since his suspension in Kentucky, Plaintiff has filed multiple lawsuits against attorneys and judges who are absolutely immune from suit. The undersigned previously discussed Deters' history of ignoring the doctrine of immunity in *Deters v. Hammer*, No. 20-cv-362-DRC-SKB, 2021 WL 664011 (S.D. Ohio Feb. 19, 2021) (Report and Recommendation). In the *Hammer* case, Plaintiff had filed suit against an attorney and his law firm, alleging defamation and false light. The suit was based on statements made by Hammer to a Kentucky Bar Association investigator in connection with Deters' unsuccessful attempt to obtain reinstatement. After citing Deters' significant history of ignoring the doctrine of absolute immunity, the undersigned recommended that sanctions be imposed sua sponte under Rule 11.

> Plaintiff has filed suit against defendants who enjoy absolute immunity on multiple occasions, including this case, and either fails to understand or willingly disregards that clear legal doctrine. Therefore, the undersigned recommends consideration of two non-monetary sanctions: (1) an express warning to Plaintiff that filing a further lawsuit against any defendant who enjoys absolute immunity may result in sanctions, including but not limited to a declaration that Plaintiff is a vexatious litigator; and (2) requiring Plaintiff to provide a pre-filing certification by a licensed attorney prior to initiating another pro se suit that, under existing law or other non-frivolous argument, the named defendant(s) are not immune from suit.

11

!
*Deters v. Hammer*, No. 1:20-cv-362, 2021 WL 664011, at *7.

In a published opinion, U.S. District Judge Douglas R. Cole adopted the Report and Recommendation ("R&R") and granted summary judgment to the defendants based on immunity. *Id.*, 568 F. Supp.3d 883 (S.D. Ohio 2021). As to the question of sanctions, however, the Court wrote:

> The R&R suggests that Deters is "skating on thin ice" as he "has filed suit against defendants who enjoy absolute immunity on multiple occasions," "either fail[ing] to understand or willingly disregard[ing] that clear legal doctrine." (R&R, Doc. 22, #319). The Court largely agrees with that characterization. At the same time, Deters is correct that there does not appear to be any Ohio case law expressly applying absolute immunity in the factual setting of statements made for use in connection with another State's disciplinary process. While that seems a slim reed, the Court concludes that sanctions are not currently warranted. That being said, **Deters is now on notice that absolute immunity applies to such statements, so a further lawsuit of this type may lead to a different outcome on the sanctions question**.

*Id.*, 568 F.Supp.3d at 889 (emphasis added). In other words, the Court declined to impose sanctions in *Hammer* because there was no controlling Ohio authority applying the doctrine of absolute immunity to the facts presented (statements made by an Ohio attorney for use in connection with Kentucky disciplinary proceedings). But the Court expressly warned Deters that another defamation lawsuit "of this type" (based on a lawyer's statements in the course of a judicial proceeding) could lead to future sanctions.

In the instant case, Deters once again has filed suit against an attorney and his law firm based on statements made during the course of a judicial proceeding. Unlike in *Hammer*, there is no daylight for Deters to argue that the email falls outside the scope of absolute litigation privilege. Thus, this case represents a blatant violation of Rule 11, Fed. R. Civ. P. While the filing of this lawsuit alone supports the imposition of sanctions, Deters'

12

threat to file yet another baseless lawsuit against Porotsky's counsel in this case, over statements that are protected by the same absolute privilege, underscores the urgency of imposing sanctions.

### IV. Conclusion and Recommendations

Accordingly, it is **RECOMMENDED THAT**:

1. Defendants' motion to dismiss (Doc. 10) be **GRANTED**;

2. Because the filing of this lawsuit clearly violates Federal Rule of Civil Procedure 11(b)(2) and (3), and because Plaintiff's response to the motion to dismiss threatens to initiate another frivolous lawsuit based on conduct protected by absolute immunity, the Court immediately should impose the following non-monetary sanctions:

   a. Prior to filing another pro se lawsuit in this Court, Plaintiff should be required to provide a pre-filing certification by a licensed attorney admitted to practice in Ohio that, under existing law or other non-frivolous argument, the named defendant(s) is not subject to immunity and the complained-of conduct is not subject to absolute litigation privilege or other immunity;

   b. Plaintiff's failure to include the requisite certification by a duly licensed attorney should result in the automatic dismissal of the pro se complaint without further review of its merits.

                                                            *s/Stephanie K. Bowman*
                                                            Stephanie K. Bowman
                                                            United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| ERIC ESQUIRE DETERS, | Case No. 1:25-cv-386 |
| Plaintiff, | McFarland, J. |
| | Bowman, M.J. |
| v. | |
| RICHARD POROTSKY, et al., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).